STATE of North Dakota, Plaintiff
and Appellant,

v.

Robert HOGIE, Jr., Defendant
and Appellee.

Crim. No. 870246.

Supreme Court of North Dakota.

May 16, 1988.

Wendy P. Schulz (argued), Jamestown, for plaintiff and appellant.

Gilje, Greenwood & Dalsted, Jamestown, for defendant and appellee; argued by John E. Greenwood.

LEVINE, Justice.

The State appeals from an oral ruling granting Robert Hogie, Jr.'s motion for judgment of acquittal. Because we hold that the judgment of acquittal is in effect a dismissal of the information, we deny Hogie's motion to dismiss the appeal. We also affirm dismissal of the information.

Hogie was charged in a criminal information with:

> *"Theft of Property, a Class B Felony* in violation of § *12.1–23–02(1),* § *12.1–23–05(1),* North Dakota Century Code, by then and there defendant did knowingly take or exercise unauthorized control over the property of another; said property exceeding ten thousand dollars in value; to-wit: a 1987 Chevy Camero [sic] automobile, ..."

After the State presented its evidence and rested its case, Hogie moved for a judgment of acquittal on the ground that theft of an automobile may be charged only as a class C felony, and not as a class B

felony.[1] The trial court orally granted the motion and dismissed the jury. The trial court subsequently signed a written order granting the motion for judgment of acquittal and a judgment of acquittal was entered.

After the written order and judgment were entered, the State appealed from the oral ruling, contending that it constituted a dismissal of the information and asserting that the trial court erred in determining that automobile theft may not be charged as a class B felony. Hogie moved to dismiss the appeal on the ground that the State may not appeal from an acquittal because further prosecution after a successful appeal would violate the Double Jeopardy Clause of the state and federal constitutions.

### 1. motion to dismiss

■ The State appealed from the trial court's oral ruling granting Hogie's motion for judgment of acquittal. An oral ruling on a motion is not an appealable order. *State v. Klocke,* 419 N.W.2d 918 (N.D. 1988). "An order must be in writing. It must be signed by the judge. And the motion is pending until such time as a signed written order granting or denying it is made." *Id.,* 419 N.W.2d at 919, quoting *State v. New,* 75 N.D. 433, 435, 28 N.W.2d 522, 523 (1947). However, because a signed written order and a judgment consistent with the oral ruling were subsequently entered, we will treat the State's appeal as an appeal from the judgment. *See State v. Klocke, supra. Cf., Olson v. Job Service North Dakota,* 379 N.W.2d 285 (N.D.1985) (appeal from an "order" will be deemed properly before this court if the record contains a "judgment" which is consistent with the order); *Federal Savings & Loan Ins. Corp. v. Albrecht,* 379 N.W.2d 266 (N.D.1985) (appeal from a "memo" will be treated as an appeal from a "judgment" consistent with the memo).

■ "In a criminal action, the State has only such right of appeal as is expressly conferred by statute." *State v. Flohr,*

259 N.W.2d 293, 295 (N.D.1977). Section 29–28–07(1), N.D.C.C., provides that the State may appeal from "[a]n order quashing an information or indictment or any count thereof." A district court order dismissing an information at the close of the State's case or other order which has the effect of quashing an information is appealable under § 29–28–07(1), N.D.C.C. *State v. Iverson,* 219 N.W.2d 191 (N.D.1974); *State v. Allesi,* 211 N.W.2d 733 (N.D.1973). "[I]t is not the label which controls, but rather the effect." *State v. Howe,* 247 N.W.2d 647, 652 (N.D.1976). Thus, the State may appeal from a dismissal of an information or other order, regardless of its label, that has the same effect as an order quashing an information.

■ Section 29–28–07, N.D.C.C., does not authorize the State to appeal from an acquittal. *State v. Flohr, supra.* We must determine whether the trial court's ruling "actually represents a resolution of some or all of the factual elements of the offense charged" (*Flohr, supra,* 259 N.W. 2d at 295), thus constituting an acquittal, which is not appealable, or is an order which, regardless of its label, has the same effect as an order quashing an information.

Two decisions of the United States Supreme Court have direct bearing on our analysis of the appealability of the judgment in this case. Those decisions, decided the same day, are *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), and *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

*Sanabria* barred a government appeal of an acquittal based on insufficiency of the evidence, even though the determination that the evidence was insufficient resulted from erroneous legal rulings construing the indictment and excluding most of the evidence of defendant's guilt:

"We must assume that the trial court's interpretation of the indictment was erroneous. See n. 13, *supra.* But not every erroneous interpretation of an indictment

---

**1.** No productive purpose would be served by addressing the procedural shortcomings of both sides relating to the lack of pretrial motions on the matter of charging automobile theft as a class B or C felony. *See* Rules 7 and 12, N.D.R. Crim.P.

for purposes of deciding what evidence is admissible can be regarded as a 'dismissal.' Here the District Court did not find that the count failed to charge a necessary element of the offense, cf. *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); rather, it found the indictment's description of the offense too narrow to warrant the admission of certain evidence. To this extent, we believe the ruling below is properly to be characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error."

*Sanabria, supra*, 437 U.S. at 68–69, 98 S.Ct. at 2181, 57 L.Ed.2d at 56–57. Because the trial court found the defendant not guilty because of a failure of proof on a factual element of the offense charged, even though induced by erroneous legal rulings, there was an acquittal which barred further prosecution and the government could not appeal.

At the close of all the evidence, the trial court in *United States v. Scott, supra*, granted defendant's motion to dismiss two counts of an indictment because of pre-indictment delay. The United States Supreme Court reversed the Court of Appeals decision dismissing the government's appeal. On what constitutes a nonappealable acquittal, the court said, 437 U.S. at 97, 98 S.Ct. at 2197, 57 L.Ed.2d at 78:

"[A] defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged,' [*U.S. v.*] *Martin Linen, supra*, 430 U.S., [564] at 571, 97 S.Ct., [1349] at 1355 [51 L.Ed.2d 642]. Where the court, before the jury returns a verdict, enters a judgment of acquittal pursuant to Fed.Rule Crim.Proc. 29, appeal will be barred only when 'it is plain that the District Court ... evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction.' 430 U.S., at 572, 97 S.Ct., at 1355."

On the matter of double jeopardy, the court said, 437 U.S. at 98–99, 98 S.Ct. at 2198, 57 L.Ed.2d at 79:

"We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant.... [T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.... [I]n the present case, respondent successfully avoided such a submission [of his factual guilt or innocence] of the first count of the indictment by persuading the trial court to dismiss it on a basis which did not depend on guilt or innocence. He was thus neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him."

The judgment of acquittal states only that Hogie "is hereby acquitted of the charge of theft of property under N.D.C.C. § 12.1–23–05(1), a Class B felony." The order granting Hogie's motion states only that the "motion for judgment of acquittal is hereby granted and the Clerk of District Court is hereby ordered to enter judgment of acquittal." Therefore, in order to "look at the substance of the judge's ruling" to "determine whether it actually represents a resolution of some or all of the factual elements of the offense charged" (*State v. Flohr, supra*, 259 N.W.2d at 295), we must examine the trial court's oral statements. In granting Hogie's motion, the trial court said:

"Mr. Paulson, you charged the man with a Class B felony and under out [sic] Statute, 12.1–23–05(2)(d), the statute says, 'Theft under this chapter is a class C felony if: The property stolen is a

firearm, ammunition, explosive or destructive device, or an automobile' and notwithstanding the value if it's an automobile it has to be charged as a Class C felony. The purpose of this statute is not to allow the State to charge a Class B if the value of an automobile is over $10,000 or less if it's under."

In discharging the jury, the court said: "The Motion for Acquittal is basically what you classify as a Motion for Dismissal which means the case stops at this particular point."

Thus, it is clear that the trial court's decision was based upon the legal conclusion that theft of an automobile could only be charged as a class C felony and not as a class B felony. There was no resolution of factual elements of the offense of theft. By moving for a judgment of acquittal on the ground that automobile theft may be charged only as a class C felony, and not as a class B felony, Hogie sought "termination of the proceedings against him on a basis unrelated to factual guilt or innocence," (*United States v. Scott, supra,* 437 U.S. at 98–99, 98 S.Ct. at 2198, 57 L.Ed.2d at 79) and successfully avoided submission of his factual guilt or innocence to the jury. He was, therefore, not acquitted and "suffers no injury cognizable under the Double Jeopardy Clause" (*United States v. Scott,* supra, 437 U.S. at 99, 98 S.Ct. at 2198, 57 L.Ed.2d at 79) if the State is permitted to appeal.

We conclude that, although labeled a "judgment of acquittal," the trial court's order did not constitute an acquittal, but was, instead, an order which "has the effect of quashing an information." *State v. Iverson, supra,* 219 N.W.2d at 194. The order is, therefore, appealable under § 29–28–07(1), N.D.C.C. *State v. Iverson,*

supra; *State v. Allesi, supra.* Hogie's motion to dismiss the appeal is denied.

### 2. merits

■ The State contends that theft of an automobile valued at more than $10,000 may be prosecuted as a class B felony. Hogie contends that theft of an automobile, regardless of its value, may be prosecuted only as a class C felony.

Sections 12.1–23–02, 12.1–23–03, and 12.-1–23–04, N.D.C.C., define theft. Section 12.1–23–05, N.D.C.C., grades theft offenses by the value of the property stolen, the kind of property stolen, the manner in which the property was stolen, and the occupation of the thief. Sections 12.1–23–05(1) and 12.1–23–05(2)(d) are relevant to this appeal:

"*12.1–23–05. Grading of theft offenses.*

"1. Theft under this chapter is a class B felony if the property or services stolen exceed ten thousand dollars in value or are acquired or retained by a threat to commit a class A or class B felony or to inflict serious bodily injury on the person threatened or on any other person.

"2. Theft under this chapter is a class C felony if:

\* \* \* \* \* \*

"d. The property stolen is a firearm, ammunition, explosive or destructive device, or an automobile, aircraft, or other motor-propelled vehicle; ..."

Under § 12.1–32–01, N.D.C.C., the maximum penalty for a class B felony is ten years' imprisonment, a fine of $10,000, or both; for a class C felony it is five years' imprisonment, a fine of $5,000, or both.

Section 12.1–23–05 was drawn from a proposed Federal Criminal Code provision.[2] In enacting § 12.1–23–05, N.D.C.C., our

2. *See* The National Commission on Reform of Federal Criminal Laws, *Study Draft of a New Federal Criminal Code* § 1735 (1970), providing in part:

"§ 1735. Grading of Theft Offenses Under Sections 1732 to 1734.

"(1) Class B Felony. Theft under sections 1732 to 1734 is a Class B felony if the property or services stolen exceed $100,000 in value or are acquired or retained by a threat to commit a crime which is, in fact, a Class A or

Class B felony or to inflict serious bodily injury on the person threatened or on any other person.

"(2) Class C Felony. Theft under sections 1732 to 1734 is a Class C felony if:

\* \* \* \* \* \*

"(d) the property stolen is a firearm, ammunition, explosive or destructive device or an automobile, aircraft or other motor-propelled vehicle; ..."

Legislature lowered the threshold of a class B felony from theft of property valued in excess of $100,000 to theft of property valued in excess of $10,000. From the list of class C felonies in the proposed Federal provision, our Legislature deleted a provision relating to theft of mail and added a provision relating to theft of livestock. The minutes of the Judiciary "B" Committee, which undertook the review leading to the revision of our substantive criminal laws in Title 12.1, N.D.C.C., provide no assistance in determining whether theft of an automobile valued at more than $10,000 may be charged as a class B felony or only as a class C felony.

Because § 12.1–23–05, N.D.C.C., was drawn from § 1735 of the proposed Federal Criminal Code, we may look to comments about that provision for insight. The Comment on Theft Offenses contained in II *Working Papers of the National Commission on Reform of Federal Criminal Laws* 913, 947–949 (July 1970), states:

"(b) *Possible Class B grading on value.* —Consideration might be given to whether thefts which involve more than $100,000 (or a higher amount) might be graded as Class B felonies. * *[3] The purpose of such a provision, ..., would be simply the judgment that a theft which involves such an amount is an extremely serious offense, much more so than the ordinary theft that is thought serious enough to merit treatment as a felony. It is expected that widespread frauds, thefts of large sums of money, and other similar large scale schemes would be included, and that the value should be both low enough to include such grand schemes and high enough to exclude what might be characterized as more ordinary thefts....

\* \* \* \* \* \*

"(d) *Firearm, automobile, airplane or other vehicle.*—The Dyer Act, 18 U.S.C. § 2312, makes transportation of a stolen motor vehicle or aircraft a felony with possible sentence up to $5000 or 5 years, or both. The combination of proposed section 1735(a)(d), making theft a Class C felony if its object is a firearm, automobile, airplane or other motor propelled vehicle, will ... retain in substance the Dyer Act provision....

\* \* \* \* \* \*

"It should be noted finally that making stealing a car a felony avoids a difficult, and *essentially irrelevant,* issue of valuation in such cases. Whether a car is stolen for its resale value and is hence of an expensive type, or whether it is stolen for transportation and abandoned and is hence not necessarily an expensive model, there is a substantial invasion of the ownership rights of the victim that is felt to justify the existing Federal law making such acts felonious." (Emphasis added.)

The comment to § 1735 of the *Study Draft of a New Federal Criminal Code* prepared by the National Commission on Reform of Federal Criminal Laws (November 1970), notes, at page 201: "Firearms, explosives, destructive devices, cars, counterfeiting equipment and keys are often stolen to be used in further crime; their value is not the significant feature of the theft." *See also A Hornbook to the North Dakota Criminal Code,* 50 N.D.L.Rev. 639, 719 (1974).

Relying on the comments to § 1735 of the proposed Federal Criminal Code and the unambiguous language of our statute, Hogie has argued that the theft of any automobile, regardless of its value, is a class C felony. Also relying on the comments to § 1735, the State has argued that the statute makes theft of automobiles "felonies regardless of how low in value" they might be, and that the statute does not preclude charging theft of an automobile valued at more than $10,000 as a class B felony, rather than a class C felony.

It is apparent that the comments to § 1735 address the matter of making all automobile thefts felonies, as distinguished

---

**3.** Here, the Comment notes that "[s]uch a value grading was made in Study Draft section 1735(1)." *See* fn. 2, *supra.*

from misdemeanors. They do not, however, directly apply to the question of whether automobile thefts may be charged as different grades of felonies, depending upon the value of the automobiles stolen. While the State's argument might be plausible, § 1–02–01, N.D.C.C., provides that provisions of the North Dakota Century Code "are to be construed liberally, with a view to effecting its objects." Here, however, the objects of § 12.1–23–05, N.D.C.C., with respect to the grading of automobile theft are uncertain. The State and Hogie have both posited reasonable constructions of the statute. "It is a well-settled rule of statutory construction that penal statutes should be strictly construed against the government or parties seeking to impose them and in favor of persons on whom they are sought to be imposed." *State v. Sheldon,* 312 N.W.2d 367, 369 (N.D.1981). *See also State v. Farrell,* 214 N.W.2d 503 (N.D.1973); *Davis v. Riedman,* 114 N.W.2d 881 (N.D.1962); *State v. Fargo Bottling Works Co.,* 19 N.D. 396, 124 N.W. 387 (1910). Construing § 12.1–23–05, N.D.C.C., strictly against the State, we resolve any doubt in favor of Hogie. Accordingly, we conclude that theft of an automobile may only be charged as a class C felony.

Had the Legislature intended to punish theft of an automobile valued at more than $10,000 as a class B felony, that intention could easily have been made apparent by inserting language such as "not exceeding ten thousand dollars in value" in § 12.1–23–05(2)(d), N.D.C.C. *See* Iowa Code Ann. § 714.2 (1983); *State v. Parker,* 342 N.W.2d 459 (Iowa 1983).

Both § 1735 of the proposed Federal Criminal Code and § 12.1–23–05, N.D.C.C., treat theft and theft accompanied with a threat of serious bodily injury differently. Our construction of the statute preserves a difference in punishment between simple theft of an automobile, regardless of its value, as a class C felony, and theft of an automobile with a threat to inflict serious bodily injury as a class B felony. The enhanced seriousness of the second type of automobile theft is reflected in a higher grade of offense, a feature that would be lost if the State's argument were to prevail, since theft of an automobile valued at more than $10,000 would be a class B felony with or without a threat to inflict serious bodily injury. Our construction also retains the same penalty as the Dyer Act, which the drafters of the proposed Federal Criminal Code intended to retain for automobile theft.

It is no doubt true that, regardless of its value, the theft of an automobile "is a substantial invasion of the ownership rights of the victim" (II *Working Papers, supra,* at p. 949). We doubt, however, that theft of one person's expensive automobile poses a more substantial invasion of that person's ownership rights than the theft of another person's more modest automobile.

We have concluded that the "judgment of acquittal" entered in this action had the effect of quashing the information. It was then, not an acquittal, but a dismissal. We have also concluded that automobile theft may only be charged as a class C felony, as the trial court determined. Thus, charging the theft as a class B felony was a defect in the information and we affirm the trial court's dismissal of the information.[4]

Hogie's motion to dismiss the State's appeal is denied and the dismissal of the information is affirmed.

ERICKSTAD, C.J., and GIERKE, J., concur.

MESCHKE, J., concurs in result.

VANDE WALLE, Justice, concurring in result.

I concur in the result. I write separately for the purpose of emphasizing a problem that resulted from the adoption in Section 12.1–23–05, N.D.C.C., of a provision of the proposed Federal Criminal Code with changes in some of the subsections thereof which appear to me to put them "out of sync." As the majority opinion notes,

---

**4.** While further prosecution may not be barred [*State v. Allesi,* 216 N.W.2d 805 (N.D.1974); 1 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 195 (1982)], any further prosecution is limited to a class C felony.

when North Dakota enacted this provision it reduced the threshold of a Class B felony for theft of property from $100,000 to $10,000. Statutes using dollars as a measure of value for grading offenses should be scrutinized periodically to determine if they reflect the original philosophy in light of the current value of the dollar. The portion of North Dakota's statute, Section 12.1-23-05, with which we are concerned has not been amended since its enactment in 1973, although the value of the dollar has decreased significantly since that time as a result of inflation. We are thus confronted by a fact situation, i.e., theft of an automobile, the value of which exceeds $10,000, which would otherwise qualify the theft as a Class B felony were it not for the provision making theft of an automobile a Class C felony. That fact situation would have been improbable at best were the limits for a Class B felony $100,000 as contemplated in the Federal Criminal Code and perhaps unlikely, even with the much lower limit of $10,000, in 1973 when the statute was enacted.

This change in the statute and the change in the value of the dollar has distorted the scheme of the Federal Criminal Code, which apparently influenced North Dakota when the statute was enacted in 1973. As an example, the comments from the Working Papers of the National Commission on Reform of Federal Criminal Laws cited in the majority opinion indicate that in the theft of a car the value is "essentially irrelevant." Nevertheless, the majority opinion also observes that the Federal Criminal Code and our statute treat theft and theft accompanied with a threat of serious bodily injury differently and that the construction espoused therein "preserves a difference in punishment between simple theft of an automobile, regardless of its value, as a class C felony, and theft of an automobile with a threat to inflict serious bodily injury as a class B

felony." I am unconvinced by that logic, for it must necessarily rely upon subsection 1 of Section 12.1–23–05 which defines theft as a Class B felony "if the property or services stolen exceed ten thousand dollars in value *or* are acquired or retained by a threat to commit a class A or class B felony *or* to inflict serious bodily injury ..." [Emphasis mine.] It seems to me that if that portion of the statute which refers to threat to inflict serious bodily injury can turn the theft of an automobile from what would otherwise be a Class C felony into a Class B felony, so grammatically (and perhaps logically) should the theft of an automobile which is over $10,000 in value. We can thus conclude one of several things: i.e., (1) when our Legislature adopted the provision from the proposed Federal Criminal Code but substituted $10,000 as the threshold for the Class B felony rather than the $100,000 proposed in the Federal Criminal Code it changed the relationship and the balance of the various provisions of the grading statute either intentionally or unintentionally or (2) the rationale did not change and that if any of the conditions of Section 12.1–23–05(1) are met the theft is a Class B felony regardless of what it is that was stolen.

Although I prefer the result, reflected in the dicta in the majority opinion, that theft of an automobile accomplished with threat to inflict serious bodily injury would be a Class B felony, the arrangement and relationship of the various parts of the statute convinces me that the theft of an automobile with a value of more than $10,000 *or* the theft of an automobile with a threat to inflict serious bodily injury are *both* Class B felonies or *neither* is a Class B felony. Because, as noted in the majority opinion, we strictly construe penal statutes in favor of the persons on whom they are sought to be imposed, I concede we should construe the statute as grading the theft of an automobile exclusively as a Class C felony.[1]

---

1. I cannot help but observe that it seems probable the comments from the Working Papers quoted in the majority opinion relative to the Dyer Act and the irrelevancy of valuation in the case of theft of a car indicate only an intent to make the theft of an automobile a felony because "there is a substantial invasion of the ownership rights of the victim *that is felt to justify the existing Federal law making such acts felonious.*" [Emphasis supplied.] Because at the time the working papers were written, and even today, an automobile with a value in ex-

However, that same rationale appears to me to apply to the situation in which the theft of that automobile is accomplished with a threat to inflict serious bodily injury.

There may well be sound reasons to suggest that a crime, such as theft, committed with a threat to inflict serious bodily injury should be graded as a more serious offense than the theft of property, even that of a high dollar value, accomplished without such a threat. But I am not convinced our statute accomplishes that end or that we can so construe the statute except by arbitrary judicial fiat. If that end is desirable policy the Legislature should amend the statute accordingly.

cess of $100,000 would be extraordinary, the comments seem to reflect merely a justification for making the theft of an automobile a felony, regardless of its lesser value, not an intent to limit the theft of an automobile to a Class C felony if its value exceeded $100,000; therefore, theft of any property worth more than $100,000, including an automobile, was to be a Class B felony. If our Legislature adopted the same rationale although lowering the threshold for a Class B felony from $100,000 to $10,000, the theft in this instance would be a Class B felony.