STATE of North Dakota, Plaintiff and Appellant,

v.

Jonathan MELIN, Sr., and Diana Melin, Defendants and Appellees.

Crim. No. 870290.

Supreme Court of North Dakota.

July 21, 1988.

James M. Vukelic, Sol. Gen., Office of Atty. Gen., Bismarck, for plaintiff and appellant.

Michael P. Farris (argued) and J. Michael Smith, Home School Legal Defense Ass'n, Great Falls, Va., and Gregory L. Lange, of Richardson, Isakson & Lange, Hazen, for defendants and appellees.

VANDE WALLE, Justice.

The State appealed from what the trial court termed a "judgment of not guilty," which was entered upon a dismissal of a complaint charging Jonathan and Diana Melin with violating the compulsory school-attendance law, Chapter 15–34.1, N.D.C.C. We reverse.

Jonathan and Diana Melin are the parents of Jonathan Melin, Jr. (Teddy). Teddy was seven years of age at the time the complaint in this case was filed. The complaint charged the Melins with failing to send Teddy to a public school pursuant to Section 15–34.1–01, N.D.C.C., without being excused from that requirement as permitted by the statutory exceptions to Section 15–34.1–01.

The Melins had been educating Teddy in their home using a curriculum provided by the Advanced Training Institute of America. Both of the Melins have bachelor's degrees. Jonathan has a bachelor of arts degree in Bible and pastorology, and Diana has a bachelor of science degree in Bible

and nursing. However, neither of these degrees qualified the Melins to teach in North Dakota. See Section 67–02–02–02, N.D.Admin.Code. The Melins therefore were not certified to teach in North Dakota and thus could not comply with the private-school exception to the compulsory school attendance law under Section 15–34.1–03(1), N.D.C.C.[1]

Prior to trial the Melins and the State entered into a stipulation which provided that (1) the Melins resided within Oakes Public School District and that during the 1986–1987 school year the Melins had violated Section 15–34.1–01, (2) the Melins had been advised of their constitutional rights, including the right against self-incrimination, and that they had been advised of the provisions of Title 15–34.1, N.D.C.C., and (3) in return for the State's promise to not subpoena Teddy and its promise to not object to certain transcribed testimony and test results, the Melins stipulated to (1) and (2) above. Also prior to trial the Melins submitted a trial brief to the court in which they argued that, among other issues, the requirement that a teacher be legally certified by the State of North Dakota in order that a private-school exception be permitted infringed upon their right to freely exercise their religion provided by the First Amendment to the United States Constitution.

A trial to the court was held on July 8, 1987. At trial the State offered into evidence the stipulation. The State rested and the Melins then testified about their religious beliefs and the educational routine they utilized for teaching Teddy. The Melins introduced evidence through the testi-mony of Inge Pohl on the curriculum utilized by the Melins and on the educational progress made by Teddy. The Melins also introduced evidence concerning a study performed by the State Department of Public Instruction which considered possible changes in the compulsory school-attendance law, one such change being the requirement of a bachelor's degree rather than a teacher's certificate for the teaching of elementary-age children. No changes were adopted by the Legislature as a result of that study.

At the conclusion of the evidence the court allowed the State time in which to file a reply to the Melins' trial brief, and the court asked both parties to submit written arguments. Subsequently, on September 3, 1987, the court issued a memorandum opinion indicating that the "complaint must be dismissed" because the court found the requirement of teacher certification in the compulsory school-attendance law to be an unconstitutional infringement of the Melins' right to free exercise of religion. On the same date the court issued a "judgment of not guilty." It is from this judgment that the State appealed.[2]

## I

■ Initially we must consider the Melins' motion to dismiss the appeal. The Melins contend that a decision adverse to them would allow the State to twice place them in jeopardy for the same offense contrary to the directive of the Fifth Amendment to the United States Constitution.

The Fifth Amendment provides that "nor shall any person be subject for the same

1. Section 15–34.1–03(1) provides:
   "The parent, guardian, or other person having control of a child required to attend school by the provisions of this chapter shall be excused by the school board from causing the child to attend school whenever it shall be shown to the satisfaction of the board, subject to appeal as provided by law, that one of the following reasons exists:
   "1. That the child is in attendance for the same length of time at a parochial or private school approved by the county superintendent of schools and the superintendent of public instruction. *No such school shall be approved unless the teachers therein are legally certified in the state of North Dakota* in accordance with section 15–41–25 and chapter 15–36, the subjects offered are in accordance with sections 15–38–07, 15–41–06, and 15–41–24, and such school is in compliance with all municipal and state health, fire, and safety laws."

2. Although the State cannot appeal from a judgment [*State v. Flohr*, 259 N.W.2d 293 (N.D. 1977)], as discussed later in our opinion we consider the effect of this judgment to have been an order dismissing the complaint. An order dismissing a complaint has the same effect as an order quashing an indictment, which is appealable under Section 29–28–07(1), N.D.C. C. *Flohr, supra.*

offense to be twice put in jeopardy of life or limb; ..." It was made applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The guarantee consists of three separate constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." [Footnote omitted.] *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664 (1969).[3] In this case the Melins claim that what the trial court termed a "judgment of not guilty" was an acquittal, and that a reversal of the trial court would subject them to a second prosecution for the same offense following that acquittal. We disagree.

Although the trial court termed its action a "judgment of not guilty," the mere use of those words did not establish the action as an acquittal. As we stated in *State v. Flohr*, 259 N.W.2d 293, 295 (N.D.1977):

"The question of what constitutes an 'acquittal' is not to be controlled by the form of a judge's ruling. *United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). Rather, one must look at the substance of the judge's ruling, whatever its label, and determine whether it actually represents *a resolution of some or all of the factual elements of the offense charged. United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)." [Emphasis added.]

See also *State v. Hogie*, 424 N.W.2d 630 (N.D.1988). Thus we must look to the substance of the trial court's action to determine whether it was an acquittal.

A review of the trial court's memorandum opinion accompanying the "judgment of not guilty" clearly indicates that the trial court was not resolving "some or all of the factual elements of the offense charged." The memorandum opinion is confined to an analysis of whether the requirement of teacher certification under Section 15–34.1–03(1) unconstitutionally infringed on the Melins' First Amendment right of free exercise of religion. As the trial court stated: "The only real issue in this 'home school' case manifestly remains the alleged abridgement and infringement of the Melins' rights under the free exercise clause to the First Amendment ..." The trial court determined that there was an infringement and concluded, "Therefore the complaint must be dismissed." Rather than an acquittal based on some or all of the facts, the trial court was dismissing the complaint because it determined the statutory requirement that a teacher be certified unconstitutionally infringed on the Melins' First Amendment right to the free exercise of religion.

The Melins confuse the factual determination inherent in a constitutional challenge under the Free Exercise Clause of the First Amendment with the determination of some or all of the factual elements of the offense charged which is required for an acquittal. In analyzing a challenge under the Free Exercise of Religion Clause we consider:

"(1) whether the activity interfered with by the state is motivated by and rooted in a legitimate and sincerely-held religious belief; (2) whether the parents' free exercise of religion has been burdened by the regulation, and the extent of or impact of the burden on their religious practices; and (3) whether the state has a compelling interest in the regulation which justifies the burden on the free exercise of religion and overrides the interest of the parents in exercising their religious practices. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); ..." *State v. Patzer*, 382 N.W.2d 631, 634 (N.D.1986), *cert. denied* 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 50 (1986).

While the questions of whether a statute burdens a person's right to free exercise of religion and whether the State has a com-

---

**3.** We note that the double-jeopardy protection under Article I, Section 12, of the North Dakota Constitution does not intend a result different from the Double Jeopardy Clause of the Federal Constitution. *State v. Allesi*, 216 N.W.2d 805 (N.D.1974).

pelling interest justifying the burden are questions of law, the question of whether an activity is motivated by a sincerely held religious belief is a question of fact. *Attorney General v. Bailey*, 386 Mass. 367, 436 N.E.2d 139 (1982), *cert. denied* 459 U.S. 970, 103 S.Ct. 301, 74 L.Ed.2d 282 (1982); *Roloff Evangelistic Enterprises, v. State*, 556 S.W.2d 856 (Tex.Civ.App.1977), *appeal dismissed* 439 U.S. 803, 99 S.Ct. 58, 58 L.Ed.2d 96 (1978); *People v. Mullins*, 50 Cal.App.3d 61, 123 Cal.Rptr. 201 (1975). Thus, when the trial court considered whether the Melins' actions were motivated by a sincerely held religious belief, it was making a factual determination.

However, the factual determination which is critical to an acquittal concerns the facts relating to some or all of the elements of the offense charged. *State v. Flohr, supra.* Our statute defines the elements of an offense as

"a. the forbidden conduct; b. the attendant circumstances specified in the definition and grading of the offense; c. the required culpability; d. any required result; and e. the nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue." Sec. 12.1–01–03(1), N.D.C.C.

The Melins argue that their free-exercise-of-religion claim was a defense. However, a review of the comments to the corresponding provision to Section 12.1–01–03(1) in the proposed Federal Criminal Code from which our statute is derived [see *State v. Trieb*, 315 N.W.2d 649, 657, footnote 9 (N.D.1982)] reveals that the defenses referred to by Section 12.1–01–03(1) are those denominated in Title 12.1–05, N.D.C. C. See also *State v. Dilger*, 338 N.W.2d 87 (N.D.1983). Thus the trial court's determination that there was an unconstitutional infringement of the Melins' right to free exercise of religion was not a resolution of some or all of the factual elements of the offense charged.

Our conclusion that the factual determination made by the trial court when it decided the Melins' free-exercise-of-religion claim and dismissed the complaint was not an acquittal is supported by the United States Supreme Court decision in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). In *Scott* the Court considered whether the Double Jeopardy Clause would prevent the retrial of a defendant whose motion to dismiss the indictment against him (made before and during trial) was granted but was reversed on appeal. The indictment against the defendant was dismissed by the trial court at the conclusion of all the evidence on the basis that the defendant had been prejudiced by pre-indictment delay. That was the basis of the defendant's motions made before and during trial. The Court held in *Scott* that the Double Jeopardy Clause would not serve as a bar to retrial if the trial court's decision was reversed.

In reaching that decision the Court overruled its decision in *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). In *Jenkins* the Court had held:

"whether or not a dismissal of an indictment after jeopardy had attached amounted to an acquittal on the merits, the Government had no right to appeal [the Government's right to appeal was set forth in 18 U.S.C. § 3731 which allowed the Government to appeal in criminal matters except where the Double Jeopardy Clause would prohibit further prosecution], because 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand.'" [Footnote omitted.] *Scott*, 437 U.S. at 86, 98 S.Ct. at 2191, 57 L.Ed.2d at 71, quoting *Jenkins*, 420 U.S. at 370, 95 S.Ct. at 1013, 43 L.Ed.2d at 259.

Thus under *Jenkins* double jeopardy occurred whenever any resolution of factual issues related to the elements of the offense charged would be necessary upon reversal. The Court in *Scott* decided that this definition was too broad; instead, it reasoned that an acquittal for purposes of the Double Jeopardy Clause occurs only when the trial court has resolved some or

all of the factual elements of of the offense charged:

"Despite [Scott's] contentions, an appeal is not barred simply because a ruling in favor of a defendant 'is based upon facts outside the face of the indictment,' or because it 'is granted on the ground ... that the defendant simply cannot be convicted of the offense charged.' *Rather, a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'*" [Citations omitted; emphasis added.] 437 U.S. at 96–97, 98 S.Ct. at 2196, 57 L.Ed.2d at 77.

The Court in *Scott* determined that there had been no acquittal even though the trial court had made a factual determination concerning the length of the pre-indictment delay. Similarly, there was no acquittal in this case even though the trial court made a factual determination concerning whether the Melins' actions were motivated by a sincere religious belief.

We conclude that the Double Jeopardy Clause would not bar further proceedings against the Melins should we reverse the decision of the trial court. Therefore, we decline to dismiss the appeal on the basis that it would violate double jeopardy.

## II

Secondly, the Melins assert in their motion to dismiss the appeal that the State has no statutory basis to appeal the trial court's decision. We disagree.

█ In a criminal action the State has only that right of appeal which is provided by statute. *State v. Borden,* 316 N.W.2d 93 (N.D.1982). In this case the State contends that its right of appeal is provided by Section 29–28–07(1), N.D.C.C. That section provides that the State may appeal from

"An order quashing an information or indictment or any count thereof."

The State's position is that although the trial court termed its action a "judgment of not guilty" it was not acquitting the Melins but rather the trial court was dismissing the complaint against the Melins because it believed the statutory requirement of teacher certification unconstitutionally infringed upon the Melins' right to free exercise of religion. As we discussed in the previous section we agree with the State's analysis of the trial court's action; what the trial court termed a "judgment of not guilty" was actually a dismissal of the complaint.

This court has previously held that an order dismissing a criminal complaint is equivalent to the quashing of a complaint, and thus orders dismissing complaints are appealable under Section 29–28–07(1). *State v. O'Boyle,* 356 N.W.2d 122 (N.D. 1984); *State v. Teigen,* 289 N.W.2d 242 (N.D.1980); *State v. Hanson,* 252 N.W.2d 872 (N.D.1977). Thus the trial court's dismissal of the complaint is appealable by the State under Section 29–28–07(1). Therefore, we decline to dismiss the appeal.[4]

## III

█ We turn now to the merits of this appeal. The State contends that the trial court's dismissal of the complaint was based on an erroneous conclusion, i.e., that the provision of Section 15–34.1–03(1) requiring that when a child is taught outside the public school system that child must be taught by a person legally certified to teach in North Dakota, unconstitutionally infringed on the Melins' right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

We noted above that when a court analyzes a challenge to a statute under the

---

4. In their motion to dismiss this appeal the Melins also argued that Section 29–28–35, N.D. C.C., limits the power of this court to review the trial court's decision. That section provides that in an appeal taken by the State this court may not reverse a judgment or modify a judgment so as to increase the punishment. However, as we have previously discussed, the trial court's designation of its action as a "judgment of not guilty" was actually a dismissal of the complaint. Thus no judgment exists in this case and therefore Section 29–28–35 plays no part in the resolution of this case.

Free Exercise of Religion Clause it must consider:

" '(1) whether the activity interfered with by the state is motivated by and rooted in a legitimate and sincerely-held religious belief; (2) whether the parents' free exercise of religion has been burdened by the regulation, and the extent of or impact of the burden on their religious practices; and (3) whether the state has a compelling interest in the regulations which justifies the burden on the free exercise of religion and overrides the interest of the parents in exercising their religious practices.' " *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)." *State v. Patzer, supra.*

In *Patzer*, we rejected a challenge to the requirement of teacher certification, finding certification to be constitutional when analyzed under a free-exercise-of-religion claim.

In this case the State concedes that the Melins are motivated by a sincerely held religious belief. In deciding those beliefs Jonathan Melin testified that it is his religious belief that a child's father has the ultimate responsibility for educating his children, stating, "The scriptures do dictate that every father is to be the one who is to oversee and to control and be responsible for the education of their children." Mr. Melin also testified that it would be his right to delegate this educational responsibility to a public school. However, he testified that he had not chosen to delegate this responsibility, and described his reasons as follows:

"First of all in the reading that I have done and the research that I have done from a purely academic standpoint, I've come to the conclusion from this research that home education, purely educationally speaking, is the very best type of education that you can give. Because the education on a tutorial approach, a one on one or one on two or ultimately in our family, one on five, is so much better and so much more easily to be streamlined to be able to fit the specific needs of the children as opposed to a classroom type of atmosphere. No. 2, from a religious standpoint, I believe it's my responsibility to train my children in God's ways and that all training should be centered around God's ways because of by stating that God's word is truth. And thirdly, that it's also my responsibility to protect my children of those things which would be harmful to them."

Mr. Melin went on to describe the things which would be harmful to his children as the effects of peer dependency, or, as the trial court termed it, "peer socialization." Mr. Melin described peer dependency as the process whereby a child gives more attention to the beliefs of his friends than to the beliefs of his parents. Diana Melin testified that she shared the religious beliefs of her husband relating to home schooling.

This description of religious belief is similar to the religious belief held by the defendants in *Patzer*. Because the Melins' religious belief is similar to the religious belief of the defendants in *Patzer*, the burden placed on that belief by the requirement of teacher certification is also similar. Thus our decision in *Patzer* controls the outcome of this case.

In *Patzer* we concluded that the requirement that when a child is educated outside the public school system that education must be conducted by a person certified to teach in North Dakota, did not unconstitutionally infringe upon the defendants' right of free exercise of religion because the State has a compelling interest in the education of children. In reaching that decision we noted that when the State has a compelling interest which would justify the burden placed on the free exercise of religion, in order to be constitutionally acceptable that interest must be furthered by means which are the least restrictive to the free exercise of religion. Our analysis of the least-restrictive-means test in *Patzer* led us to conclude that:

"Teacher certification appears to us to be among the least personally intrusive methods now available to satisfy the state's prime interest in seeing that its children are taught by capable persons." 382 N.W.2d at 639.

In attempting to differentiate this case from *Patzer* the Melins argue that since our decision in *Patzer* new evidence has been discovered which indicates that teacher certification is not the least restrictive means available to further the State's compelling interest in the education of children. The Melins note that since *Patzer* was decided the Department of Public Instruction has studied various alternatives to teacher certification. The Melins argue that this indicates that teacher certification does not meet that part of the compelling-State-interest test which requires that the statute in question utilize the least-restrictive alternative. See *Patzer*, 382 N.W.2d at 636. We recently rejected an identical argument in *State v. Anderson*, 427 N.W.2d 316 (N.D.1988).

It is of greater import that the Legislature declined to adopt legislation including parts of those alternatives when they were submitted to it at the 1987 legislative session. This seems to indicate that the Legislature did not believe that the alternatives would adequately serve to protect the State's interest in the education of children. While the Legislature is not the final arbiter of what is constitutionally permissible, that being the duty of this court, the Legislature must ensure that the State's interest in the educational progress of all children within the State is protected. Thus our decision is influenced by our previous statement that:

"The courtroom is simply not the best arena for the debate of issues of educational policy and the measurement of educational quality. Although North Dakota's minimal requirements for state approval of a private or parochial school may be imperfect, without the regulations the state would have no reasonable assurance that its recognized interest in providing an education for its youth is being protected. In time, other means of assuring quality education under circumstances which provide safety and health may evolve, but until such time, this means appears to be proper." *State v. Shaver*, 294 N.W.2d 883, 900 (N.D.1980).

We continue to believe that the State has a compelling interest in ensuring that when public or nonpublic education occurs that it is conducted by persons who are knowledgeable and who are able to impart that knowledge in a manner conducive to a child's education. "Although certification is not a guarantee of teacher competence, logic and experience indicate that it furthers that goal." *Sheridan Road Baptist v. Department of Educ.*, 426 Mich. 462, 396 N.W.2d 373, 396 (J. Boyle concurring) (1986), *cert. denied* —— U.S. ——, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). See also *Johnson v. Charles City Comm. Schools Bd.*, 368 N.W.2d 74 (Iowa 1985), *cert. denied* 474 U.S. 1033, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985); *State, Etc. v. Faith Baptist Church, Etc.*, 207 Neb. 802, 301 N.W.2d 571, *appeal dismissed* 454 U.S. 803, 102 S.Ct. 75, 70 L.Ed.2d 72 (1981); *Fellowship Baptist Church v. Benton*, 620 F.Supp. 308 (D.C. Iowa 1985), *affirmed in part* 815 F.2d 485 (8th Cir.1987). Therefore, we reverse the trial court's dismissal of the complaint based upon the conclusion that the requirement of teacher certification unconstitutionally infringed upon the Melins' right to free exercise of religion under the First Amendment to the United States Constitution.

Our reversal of the trial court's dismissal of the complaint leaves this case in a unique posture because the dismissal occurred after all the evidence had been entered in a trial to the court. If this had been a trial to a jury we would be required to grant a new trial because the jury would have been discharged at the time of the dismissal. However, because this was a trial to the court we remand to the trial court for a determination of guilt or innocence.

Our remand is similar to the action of the Supreme Court of Massachusetts in *Commonwealth v. Babb*, 389 Mass. 275, 450 N.E.2d 155 (1983). In *Babb* the defendant was charged with vehicular homicide. Prior to a trial to the court the parties entered into a stipulation which provided that (1) the defendant operated the vehicle, (2) operation of the vehicle was done in a negligent manner, and (3) a death was caused by that operation. Subsequently, after the

conclusion of the evidence, the trial court dismissed the complaint and adjudicated the defendant not guilty because the State had failed to follow the procedural requirements for the filing of a complaint in a vehicular-homicide case. On appeal the trial court's decision was reversed. After noting the unique posture of the case the court remanded it to the trial court because nothing remained to be done except for the judge to decide the case. 450 N.E.2d at 161.

We conclude that what the trial court termed a "judgment of not guilty" was actually a dismissal of the complaint, and that it must be reversed.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

MESCHKE, Justice, dissenting.

I respectfully dissent.

There is no statutory authority for the state to appeal from a judgment of acquittal in a criminal case. NDCC 29–28–07(1) authorizes an appeal by the prosecution only from "an order quashing an information or indictment or any count thereof." Here, a judgment of acquittal was entered at the end of a complete trial at which Melins offered extensive evidence about their defense of freedom of religion under the First Amendment. There was no order "quashing," or even dismissing, the information or indictment. While a trial court's characterization cannot control, neither should an appellate court's convenient reconstruction. See State v. Hogie, 424 N.W. 2d 630 (N.D.1988) and Smalis v. Pennsylvania, 476 U.S. 140, 144, footnote 5, 106 S.Ct. 1745, 1748 footnote 5, 90 L.Ed.2d 116 (1986).

Our statute is unlike the parallel federal statute on criminal appeals. The federal one authorizes an appeal by the prosecution from any decision "dismissing an indictment or information," but goes on to say "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U.S.C. § 3731. The majority opinion equates our restricted state statute with the federal version, as amended in

1971, authorizing appeals to the full extent allowable under double jeopardy jurisprudence. See United States v. Scott, 437 U.S. 82, 85, 98 S.Ct. 2187, 2190, 57 L.Ed.2d 65 (1978). In my view, this interpretive license extends our statute beyond its expression.

Since there is no statutory basis for appeal of this judgment of acquittal, I would dismiss the appeal.

Ordinarily, we avoid constitutional confrontations where there are appropriate alternative grounds to resolve the case before us. In Interest of Goodwin, 366 N.W. 2d 809 (N.D.1985). But, if this case must be analyzed under the Double Jeopardy Clauses of the United States and North Dakota Constitutions, I also believe that this judgment of acquittal constitutionally bars a second prosecution. This acquittal was adjudged after a complete trial. It is too facile to analyze the judgment for legal errors and then to conclude that it did not represent "a resolution, correct or not, of some or all of the factual elements of the offense charged."

It is fundamental that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." Sanabria v. United States, 437 U.S. 54, 64, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (1978).

Sanabria, supra, was decided on the same date as United States v. Scott, supra, but is not even mentioned in the majority opinion. In Sanabria, the United States Supreme Court held that the Double Jeopardy Clause barred a government appeal from a midtrial ruling resulting in exclusion of certain evidence, which it assumed was erroneous, and from a following judgment of acquittal entered at the end of the trial. Seven justices concurred in that result.

By contrast, Scott allowed the government to appeal from an order granting a defense motion to terminate a trial for preindictment delay, which was done at the close of evidence and before a verdict. Like Jenkins, which it overruled, the dis-

missal was based on a reason of procedural fairness prior to trial. Even then, only five justices concurred and four dissented.

That *Scott* does not go as far as it is applied in the majority opinion was explained in *Smalis v. Pennsylvania*, 476 U.S. 144–146, 106 S.Ct. 1748–49:

"The Pennsylvania Supreme Court erred in holding that, for purposes of considering a plea of double jeopardy, a defendant who demurs at the close of the prosecution's case in chief 'elects to seek dismissal on grounds unrelated to his factual guilt or innocence.' (citation omitted). What the demurring defendant seeks is a ruling that as a matter of law the State's evidence is insufficient to establish his factual guilt. Our past decisions, which we are not inclined to reconsider at this time, hold that such a ruling is an acquittal under the Double Jeopardy Clause. *See, e.g., United States v. Martin Linen Supply Co.*, 430 U.S. 564 [97 S.Ct. 1349, 51 L.Ed.2d 642] (1977); *Sanabria v. United States*, 437 U.S. 54 [98 S.Ct. 2170, 57 L.Ed.2d 43] (1978). *United States v. Scott* does not overturn these precedents; indeed, it plainly indicates that the category of acquittals includes 'judgment[s] ... by the court that the evidence is insufficient to convict.' 437 U.S., at 91.

\*　　\*　　\*　　\*　　\*　　\*

"... [T]he Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into ' "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." ' *Martin Linen, supra*, [430 U.S.] at 570 [97 S.Ct. at 1354]." *See also* footnote 9, 476 U.S. at 146, 106 S.Ct. at 1748–49.

Melin's situation is more analogous to that in *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977), a *per curiam* opinion which was not overturned by *Scott*. In *Finch*, after considering stipulated facts "and reviewing the applicable treaties" bearing on the charged offense of hunting on Indian lands, the trial court dismissed the charge for failure to state an offense. The Court of Appeals considered the appeal and reversed because it believed that no further factual inquiry was required in the trial court when its legal conclusions were incorrect. The United States Supreme Court vacated the action by the Court of Appeals and directed that the appeal be dismissed, saying:

"Absent a plea of guilty or nolo contendere, see Fed.Rule Crim.Proc. 11, a verdict or general finding of guilt by the trial court is a necessary predicate to conviction. See Rule 23(c). Because the dismissal was granted prior to any declaration of guilt or innocence, 'on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged,' *Lee* [*v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977)] *supra*, at 30, we hold that the Government's appeal was barred by the Double Jeopardy Clause." 433 U.S. at 677, 97 S.Ct. at 2910.

The majority analysis in this case ignores all affirmative defenses, particularly those based on constitutional freedoms. *See* NDCC 12.1–01–03(3). The effect of the majority ruling is to remove affirmative defenses from the purview of the Double Jeopardy Clauses and relegate them to some inferior status. Traditionally, affirmative defenses have been recognized as a part of double jeopardy jurisprudence. 21 Am.Jur.2d *Criminal Law* § 183 (1981); 75 Am.Jur.2d *Trial* § 425 (1974). No explanation is suggested for why they are now left out of consideration. An acquittal based upon an affirmative defense should not be subjected to judicial redetermination on appeal when, as here, it involves culpability. *See United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944) (freedom of religion defense) and *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed. 2d 1 (1978) (insanity defense).

The thin majority in *Scott* did not rule out the role of affirmative defenses in determining culpability. *Scott* recognized that justification defenses affecting culpability call for a different analysis than used

**236**

in *Scott.* Thus, the majority opinion in *Scott* said:

> "The defense of insanity, like the defense of entrapment, arises from 'the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense,' *United States v. Russell,* 411 U.S. 423, 435, [93 S.Ct. 1637, 1644, 36 L.Ed.2d 366] (1973), where other facts established to the satisfaction of the trier of fact provide a legally adequate justification for otherwise criminal acts. Such a factual finding *does* 'necessarily establish the criminal defendant's lack of criminal culpability,' *post,* at 106 (BRENNAN, J., dissenting), under the existing law; the fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles,' *ibid.,* affects the accuracy of that determination, but it does not alter its essential character. By contrast, the dismissal of an indictment for preindictment delay represents a legal judgment that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation." *United States v. Scott,* 437 U.S. 82, 97–98, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978).

In dissent, Justice Brennan confirmed that the majority opinion recognized affirmative defenses bearing on culpability, but criticized the failure of the majority opinion to offer any "satisfactory explanation for the difference in treatment" for a defense based on procedural fairness.

Thus, I submit, we should distinguish between substantive determinations about culpability (including those based on affirmative defenses, particularly constitutional ones such as freedom of religion or speech) and procedural determinations about matters which do not bear on culpability as in *Scott* and *Jenkins.* In my view, this case involves substantive considerations of culpability like *Sanabria* and *Finch,* and unlike *Scott* and *Jenkins.*

As said in *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223–224, 2 L.Ed.2d 199 (1957), the "underlying idea" of the Double Jeopardy Clause

> "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

To me, those reasons resonate here. They are emphasized by the awkward problem of disposition on remand in this case, exemplified by the lack of a clear direction in the majority opinion. Therefore, I also respectfully dissent on Double Jeopardy grounds.

Finally, I also respectfully dissent from the substantive holding on freedom of religion for the reasons given in my recent dissenting opinion in *State v. Anderson,* 427 N.W.2d 316 (N.D.1988).