Robert Lee ORR, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 89SC436.

Supreme Court of Colorado, En Banc.

Dec. 24, 1990.

Rehearing Denied Jan. 28, 1991.

**510**

Miller, Hale & Harrison, David B. Harrison, Boulder, for petitioner.

James F. Smith, Dist. Atty., Michael J. Milne, Deputy Dist. Atty., Brighton, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

This case concerns the defendant Robert Lee Orr's challenge to the validity of a sobriety checkpoint conducted by the Adams County Sheriff's Department. The defendant was stopped at the sobriety checkpoint and subsequently charged with driving while under the influence of intoxicating liquor and driving while his license was suspended. The county court denied the defendant's motion to suppress evidence obtained during the checkpoint stop, and on appeal the Adams County District Court affirmed. We granted the defendant's petition for certiorari to consider whether sobriety checkpoints are permissible under the state and federal constitutions and, if so, whether the checkpoint in this case met constitutional standards. We affirm.

I

On May 24, 1988, the Adams County Sheriff's Department ("Department") conducted a sobriety checkpoint in the 7100 block of Pecos Street. Operation of the checkpoint was governed by written guidelines of the Department. Pursuant to the guidelines, each of the approximately 30 officers participating in the checkpoint had specific tasks to perform in an "assembly line" manner. Department officers were permitted to write citations only for driving under suspension, driving under revocation, driving under a denied driver license, and driving under the influence of alcohol or drugs.

The officers were instructed to stop all traffic northbound on Pecos Street; however, if a traffic backlog occurred, the officers were to permit the traffic to bypass the checkpoint. The well-lighted checkpoint, which was marked with traffic cones and a large reflective sign stating "Adams County Sheriff's Department Sobriety Checkpoint," was visible from the intersection of 70th Avenue and Pecos Street, permitting vehicles to turn around before entering the intersection. Vehicles turning around before entering the checkpoint would not be stopped. Vehicles entering the checkpoint area were directed to drive into the adjacent parking lot, where officers would request "basic identification" and proof of insurance. During the 4–hour operation, lasting from 8:30 p.m. to 12:30 a.m., officers stopped about 300 cars and arrested 12 individuals for driving under the influence of alcohol or drugs. Drivers who were not suspected of driving under the influence were detained 15 to 30 seconds. Drivers suspected of driving under the influence of alcohol or drugs were requested to perform field sobriety tests. The Department issued a press release to two newspapers and a radio station announcing that it would set up a checkpoint on May 24 in unincorporated Adams County.

When the defendant was stopped by an officer at the checkpoint and was asked to produce identification, proof of insurance,

and vehicle registration documents, the officer detected a strong odor of alcoholic beverage on the defendant's breath. He also noticed that the defendant's eyes were bloodshot and watery, and his speech was slurred. The defendant failed several field sobriety tests. Subsequently, he was arrested and charged with driving under the influence of intoxicating liquor, § 42–4–1202(1)(a), 17 C.R.S. (1984), and driving while license suspended, § 42–2–130, 17 C.R.S. (1984 & Supp.1990).

After the trial court determined that the checkpoint stop was not unconstitutional and denied the defendant's motion to suppress evidence obtained during the stop, the defendant was convicted of driving while his ability was impaired by the consumption of alcohol, § 42–4–1202(1)(b), and driving while his license was suspended.

## II

In *People v. Rister*, 803 P.2d 483 (Colo. 1990), we held that the Colorado State Patrol's establishment and operation of a sobriety checkpoint that met certain standards did not violate the fourth amendment of the United States Constitution or article II, section 7, of the Colorado Constitution.[1] In reaching our conclusion, we stated that the reasonableness under both constitutions of establishing and operating sobriety checkpoints depended on the balance of " 'the State's interest in preventing drunken driving, the extent to which [the checkpoint] system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped.' " 803 P.2d at 486 (quot-

ing *Michigan Dept. of State Police v. Sitz*, —— U.S. ——, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412) (brackets in *Rister*). Our analysis in *Rister* also indicated that we would consider the totality of the facts surrounding a sobriety checkpoint to consider whether it is unreasonable under the federal or state constitution. *See id.* at 487–489.

The facts surrounding the Department's sobriety checkpoint are similar to those surrounding the sobriety checkpoint we considered in *Rister*. *See id.* at 485. We find only two significant differences between the Pecos Street checkpoint and the *Rister* checkpoint. First, in the Pecos Street checkpoint twelve arrests for driving while intoxicated were made of 300 vehicles stopped while the State Patrol in *Rister* made no arrests for driving while intoxicated of 233 vehicles stopped. Second, the average detention of motorists at the Pecos Street checkpoint was 15 to 30 seconds while the average detention of motorists at the *Rister* checkpoint was 3 minutes.

Neither difference, however, suggests that the Pecos Street stops were any less reasonable than the stops in *Rister*. We do not believe the number of arrests made at a sobriety checkpoint to be a constitutionally significant factor in determining whether the checkpoint stops are permissible under the fourth amendment or article II, section 7.[2] However, the comparably shorter length of time—15 to 30 seconds in the Pecos Street stops versus 3 minutes in the *Rister* stops—is a factor weighing in

---

1. The fourth amendment provides:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

   Article II, § 7, of the Colorado Constitution provides in relevant part that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures."

2. In concluding that the primary purpose of sobriety checkpoints is deterrence, the Califor-

nia Supreme Court in *Ingersoll v. Palmer*, 43 Cal.3d 1321, 1337, 241 Cal.Rptr. 42, 54, 743 P.2d 1299, 1310 (1987), noted:

   An absence of arrests does not indicate a sobriety checkpoint is a futile exercise. It more likely indicates that the existence of the checkpoint program has succeeded in inducing voluntary compliance with the law, thus fulfilling the program's primary objective of keeping automobiles operated by impaired drivers off the roads.

   *See also State v. Superior Court*, 143 Ariz. 45, 48–49, 691 P.2d 1073, 1076–77 (1984) (sobriety checkpoint may be no more efficient than a roving patrol in detecting drunk drivers, but it is more effective in deterring drunk driving).

favor of the reasonableness of the stops. As in *Rister*, the balance of the competing interests weighs in favor of the reasonableness of the Pecos Street checkpoint. The brief stop of motorists to request that they produce identification and proof of insurance, and to ascertain whether they are intoxicated is a minor intrusion on their constitutional rights against unreasonable seizures. The officers operating the checkpoint had minimal or no discretion regarding the location of the checkpoint and which cars could be stopped. *Cf. Rister*, 803 P.2d at 487 ("The primary evil the [United States Supreme] Court sought to prevent in roving-patrol stops of vehicles was 'the "kind of standardless and unconstrained discretion"' present in those kinds of stops." (Quoting *Sitz*, 110 S.Ct. at 2487 (quoting *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979))). As in *Rister*, the "subjective" concerns weighing against permitting checkpoint seizures were not present in the Pecos Street checkpoint. For example, the checkpoint was well-lighted; a sign warning of the sobriety checkpoint was visible to motorists, thereby allowing motorists the opportunity to avoid the checkpoint; the checkpoint was operated in a way to avoid undue delays for motorists; and Department officers stopped motorists only long enough to obtain identification and proof of insurance, which drivers are required to carry, §§ 42–2–101(5) and –4–1213, 17 C.R.S. (1984 & Supp.1990).

We hold that the Pecos Street checkpoint stops did not violate the fourth amendment, or article II, section 7, of the Colorado Constitution.

## III

■ The defendant next argues that section 42–4–1202.1, 17 C.R.S. (1984), grants greater protection to motorists than the Colorado Constitution against unreasonable seizures, and that the checkpoint stop was invalid under section 42–4–1202.1. We disagree.

Section 42–4–1202.1 provides:

*Stopping of a suspect.* A law enforcement officer may stop any person who he reasonably suspects is committing or has committed a violation of section 42–4–1202(1) or (1.5)[3] and may require him to give his name, his address, and an explanation of his actions. The stopping shall not constitute an arrest.

In construing a statute we must give effect to the legislature's intention as it is expressed in the statute. *E.g., People v. Terry*, 791 P.2d 374, 376 (Colo.1990). Although the legislature has broad discretion to grant greater rights than are found in the state constitution, *see, e.g., In re Interrogatories Propounded by the Senate Concerning House Bill 1078*, 189 Colo. 1, 8, 536 P.2d 308, 314 (1975), we cannot interpret a statute to mean that which it does not express, *People v. District Court*, 161 Colo. 14, 24, 420 P.2d 236, 241 (1966).

We find untenable the defendant's reading of section 42–4–1202.1 as permitting no stops, including checkpoint stops, of motorists unless the stops are based on reasonable suspicion. A plain reading of the statute reveals that the statute is intended to authorize police officers to make brief stops of motorists reasonably suspected of driving while intoxicated. The statute's wording denotes that it is a statute of empowerment rather than of strict limitation on the authority of the police to make individual stops, and thus it has no bearing on checkpoint stops. *See State v. Tourtillott*, 289 Or. 845, 848–53, 618 P.2d 423, 425–27 (1980) (concluding that statute, which permitted police officers to stop an individual only if they have reasonable suspicion to believe that the individual committed a crime, was not intended to require that all law-enforcement stops comply with statute); *cf. Ingersoll v. Palmer*, 43 Cal.3d 1321, 1348–49, 241 Cal.Rptr. 42, 61, 743

3. Subsection 42–4–1202(1), 17 C.R.S. (1984), in relevant part prohibits individuals from operating a vehicle while under the influence of intoxicating liquor, or while the individual's ability to operate a vehicle is impaired by the consumption of alcohol. Subsection 42–4–1202(1.5) provides in relevant part that it is unlawful for any person to drive a vehicle with a blood-alcohol level of .15 grams or more of alcohol per hundred milliliters of blood as shown by chemical tests. A blood test of the defendant revealed that his blood-alcohol level was .202.

P.2d 1299, 1317–18 (1987) (previous cases holding that police seizures made in violation of statutory limitations on police authority are inapplicable to sobriety-checkpoint stops, which are not prohibited by California statutes; "none of these decisions holds that methods of law enforcement not specifically authorized are prohibited").

The statute does not expressly prohibit checkpoint stops, as the defendant concedes, and we are not willing to impose an interpretation on the statute that its terms do not express. *See District Court,* 161 Colo. at 24, 420 P.2d at 241; *see also Harding v. Industrial Comm'n,* 183 Colo. 52, 59, 515 P.2d 95, 98 (1973) (where language is plain and meaning is clear, court should not make "[f]orced, subtle, strained or unusual interpretation"). We conclude that section 42–4–1202.1 does not require that checkpoint stops be grounded on reasonable suspicion.

Judgment affirmed.

QUINN, J., dissents and LOHR, J., joins in the dissent.

Justice QUINN dissenting:

I respectfully dissent. In my view, the suspicionless seizure of a motorist during a highway sobriety checkpoint program violates the Search and Seizure clause of the Colorado Constitution, Colo. Const. art. II, § 7, because the seizure itself is totally unsupported by even a minimal level of individualized suspicion that the motorist was operating a motor vehicle while under the influence of, or while impaired by, intoxicating liquor.

Although the checkpoint program at issue here resulted in a proportionately greater number of arrests for driving while intoxicated than the program in *People v. Rister,* 803 P.2d 483 (Colo.1990), this difference, as the majority notes, should not be a constitutionally significant factor in determining the validity of the seizure under the Colorado Constitution. Maj. op. at 511. The majority, however, does place constitutionally significant importance on the fact that the checkpoint program in the instant case resulted in a considerably reduced average period of detention for motorists and thus constituted a "factor weighing in favor of the reasonableness of the stops." Maj. op. at 511–12. I disagree with the majority's attribution of constitutional significance to that factor.

Until this court's decision in *Rister,* the constitutional validity of intrusions into personal privacy and security under the Colorado Constitution did not turn on either the results obtained by the intrusion or the period of time during which the individual was subjected to the intrusion. Rather, Colorado case law consistently required three conditions for a temporary seizure of the person: (1) the law enforcement officer effecting the seizure must have had a specific and articulable basis in fact for suspecting that the person has engaged in criminal activity, was committing a crime, or was about to do so; (2) the purpose of the temporary seizure must have been reasonable; and (3) the scope and character of the intrusion must have been reasonably related to its purpose. *E.g. People v. Wilson,* 784 P.2d 325, 327 (Colo.1989); *People v. Ratcliff,* 778 P.2d 1371, 1376 (Colo.1989); *People v. Melgosa,* 753 P.2d 221, 225 (Colo.1988); *People v. Carlson,* 677 P.2d 310, 315 (Colo.1984); *People v. Thomas,* 660 P.2d 1272, 1274 (Colo.1983); *People v. Tate,* 657 P.2d 955, 958 (Colo.1983); *People v. Schreyer,* 640 P.2d 1147, 1149 (Colo.1982); *People v. Casias,* 193 Colo. 66, 72–77, 563 P.2d 926, 931–34 (1977); *Stone v. People,* 174 Colo. 504, 509, 485 P.2d 495, 497 (1971). As I emphasized in my dissenting opinion in *Rister,* this three-part standard "was developed with a conscious regard for the privacy interests of Colorado citizens under the Colorado Constitution." Dissenting op. 803 P.2d at 495.

I view today's decision and this court's recent opinion in *Rister* as going a long way toward approving suspicionless stops and temporary seizures of persons on the sole basis that such intrusions are brief in duration and are pursuant to a governmental initiated program calculated to deter or prevent certain forms of criminal conduct. No one doubts that stopping every pedes-

trian at selected locations in high crime areas of a city, and simultaneously making a cursory examination of their physical characteristics and frisking their outer clothing as a safety measure during the detention, probably would result in the seizure of drugs and other contraband and might even result in reducing drug abuse and other criminal activity in our society. However, the constitutional jurisprudence of our state, at least prior to this court's decision in *Rister*, ascribed a value to personal privacy and security that was irreconcilable with the notion that a court could legitimatize a suspicionless temporary seizure of a person "solely on the basis of balancing the gravity of the public interest against the severity of the intrusion associated with the seizure." *Rister*, dissenting op. at 496.

The statutory law of this state also echoes the salutary pre-*Rister* principle that a police officer must have an individualized suspicion of criminal activity in order to temporarily stop and detain a person for a brief investigation of the person's activity. Specifically, section 42–4–1202.1, 17 C.R.S. (1984), requires reasonable suspicion that a motorist is or has been driving under the influence of, or driving while ability impaired by, intoxicating liquor before a law enforcement officer may stop the motorist and "require him to give his name, his address, and an explanation of his actions." *See also* § 16–3–103(1), 8A C.R.S. (1986) (reasonable suspicion of criminal activity required before police officer may stop a person and require a person to give his name, address, identification if available, and an explanation of actions); § 42–2–113(1), 17 C.R.S. (1990 Supp.) (officer must have reasonable suspicion that motorist violated traffic laws before stopping motorist and requiring motorist to hand over driver's license). The majority declines to find any significance in the "reasonable suspicion" requirement of section 42–4–1202.1 by characterizing that statute as "a statute of empowerment rather than of strict limitation on the authority of the police to make individual stops." Maj. op. at 512. While section 42–4–1202.1 clearly is a statute of "empowerment," the

empowerment has its source in the state constitutional principle of reasonable individualized suspicion.

To authorize a stop and investigative detention of a motorist on anything less than reasonable individualized suspicion renders illusory a person's right to personal privacy and security emanating from article II, section 7 of the Colorado Constitution and mirrored in both this court's prior decisional law and the positive law enacted by the General Assembly. I would accordingly construe the Search and Seizure clause of the Colorado Constitution in a manner that vests a motorist on a public highway with the right to proceed to his or her destination without being required to submit to the seizure of his or her person, and associated questioning and observation of physical characteristics for evidence of intoxication, when there is a total absence of any cause whatever to suspect the motorist of drunken driving. I accordingly dissent and would reverse the judgment of the district court.

LOHR, J., joins in this dissent.