**CITY OF BISMARCK, Plaintiff and Appellee,**

v.

**Dale UHDEN, Defendant and Appellant.**

Cr. No. 930293.

Supreme Court of North Dakota.

March 11, 1994.

Paul H. Fraase, Asst. City Atty., Bismarck, for plaintiff and appellee.

Ralph A. Vinje, Vinje Law Firm, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

Dale Uhden appealed a county court judgment of conviction for driving while under the influence of alcohol, in violation of Bismarck City Ordinance, following an appeal by the City of Bismarck from a municipal court decision suppressing evidence and dismissing the action. We affirm the judgment of the county court.

On June 20, 1992, Uhden was stopped at a sobriety checkpoint, established on West Main Avenue in the City of Bismarck by the Bismarck Police Department. At the checkpoint, only eastbound traffic was stopped. Uhden, who was riding a motorcycle, was not observed to have violated any traffic laws nor otherwise to have been involved in any erratic driving prior to being stopped at the checkpoint. Uhden was asked to turn his motorcycle off and to produce his driver's license. When Uhden did so, the officer detected bloodshot eyes, an odor of alcohol, and poor balance. After failing field sobriety tests, Uhden was arrested for DUI.

Uhden entered a plea of not guilty in Bismarck Municipal Court and moved for suppression of the evidence of his impairment. At the suppression hearing, the City called only one witness, the arresting officer. The officer's testimony concerned both the general operation of the roadblock and the stop and arrest of Uhden. The municipal court judge issued a memorandum opinion concluding that the stop was illegal. The

judge rationalized that asking the motorist to turn off his vehicle and to produce his driver's license was not necessary to, nor consistent with, the stated objective of the checkpoint, i.e., determining whether or not the motorist was driving while under the influence. The municipal court thus suppressed the evidence of impairment and, without objection from the City, dismissed the complaint against Uhden.[1]

The City appealed the decision to county court, where Uhden again made a motion to suppress the evidence. Uhden did not allege that the city's appeal constituted double jeopardy, but rather argued that review on appeal must be limited either to the record of the municipal court, or to the testimony of the sole witness who testified in municipal court. The county court rejected Uhden's arguments, however, and, after hearing testimony from a number of witnesses regarding the planning and organization of the roadblock, found that the stop of Uhden was permissible. The county court denied Uhden's motion for a jury trial and remanded the matter to municipal court.

A trial was held in municipal court and Uhden was convicted for DUI. Uhden appealed to the county court and again moved to suppress evidence. The motion was denied without a hearing. Following a trial, Uhden was convicted and judgment was entered accordingly.[2] This appeal followed.

Uhden defines the issues on appeal as follows:

"1. ARE DUI ROADBLOCKS PERMISSIBLE STOPS IN NORTH DAKOTA IN LIGHT OF THE STATE CONSTITUTION AND N.D.C.C. 29–29–21?

"2. DOES DOUBLE JEOPARDY ARISE WHEN AN INDIVIDUAL ACQUITTED IN MUNICIPAL COURT IS RETRIED IN COUNTY COURT AND CONVICTED IN A TRIAL DE NOVO GRANTED AFTER THE CITY APPEALS THE ACQUITTAL?"

I

This court has previously considered the legality of particular law enforcement checkpoint stops in North Dakota and twice concluded the stops were "reasonable" under the Fourth Amendment to the United States Constitution. *State v. Everson*, 474 N.W.2d 695 (N.D.1991); *State v. Wetzel*, 456 N.W.2d 115 (N.D.1990); *contra, State v. Goehring*, 374 N.W.2d 882 (N.D.1985) [no evidence in record that standards, guidelines, or procedures used in vehicle stop were in compliance with Fourth Amendment]. However, we did not discuss in either *Everson* or *Wetzel* whether section 29–29–21, NDCC, or Article 1, section 8, of the North Dakota Constitution affords individuals greater protection against checkpoint stops than does the Fourth Amendment. *See State v. Matthews*, 216 N.W.2d 90, 99 (N.D.1974) ["It is within the power of this court to apply higher constitutional standards than are required of the States by the Federal Constitution."].

First, Uhden contends that section 29–29–21, NDCC, prohibits the use of sobriety checkpoints. That section provides, in relevant part,

"29–29–21. Temporary questioning of persons in public places—Search for weapons. A peace officer may stop any person abroad in a public place whom he reasonably suspects is committing, has committed, or is about to commit:

1. Any felony.

2. A misdemeanor relating to the possession of a concealed or dangerous weapon or weapons.

3. Burglary or unlawful entry.

4. A violation of any provision relating to possession of marijuana or of narcotic, hallucinogenic, depressant, or stimulant drugs."

Uhden asserts that section 29–29–21, NDCC, authorizes the stopping of motor vehicles on less than probable cause, only in the

---

1. The municipal court issued a memorandum opinion which we construe to have been a final order from which an appeal may be taken under statute. *City of Bismarck v. Hoopman*, 421 N.W.2d 466 (N.D.1988).

2. The judgment of conviction erroneously states that Uhden was convicted following a plea of guilty. Uhden had, in fact, entered a plea of not guilty and was convicted following a trial in county court.

limited circumstances listed in that section. He deduces that a stop of an automobile for reasons other than those enumerated in section 29–29–21 is thus illegal. Because police checkpoints necessarily involve stops based on less than probable cause, indeed on no particular cause at all, Uhden argues that they are effectively forbidden under section 29–29–21, NDCC.

■ Courts have long recognized that police may briefly stop and question an individual in public, even in the absence of probable cause to believe the individual guilty of a crime. Charles H. Whitebread & Christopher Slobogin, *Criminal Procedure* § 9.01 (2d ed.) [1986] (citing, e.g., *Lawrence v. Hedger,* 3 Taunt. 14, 128 Eng.Rep. 6 [Common Pleas. 1810] ). Although such stops are "seizures" within the meaning of the Fourth Amendment, *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968), the Fourth Amendment does not forbid " 'all searches and seizures, but unreasonable searches and seizures.' " 392 U.S. at 9, 88 S.Ct. at 1873 [quoting *Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960) ]. The *Terry* Court recognized that it is not unreasonable for an officer to, "in appropriate circumstances and in an appropriate manner[,] approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880.

■ Following, and apparently in light of, *Terry,* the North Dakota State Legislature enacted section 29–29–21, NDCC, specifying when police officers may stop and question individuals abroad. However, we have not previously applied this statute to motor vehicle stops. Reasonable suspicion that an individual is driving while under the influence of alcohol is not listed in section 29–29–21, NDCC, as a justification for stopping the motorist. Yet this court has recognized that the standard upon which a police officer may stop a vehicle for investigatory purposes is not probable cause, but is a "articulable and reasonable suspicion that the driver has or may be violating the law"; and the suspected offenses which have justified stops have not been limited to those enumerated in section 29–29–21, NDCC. *See, e.g., State v. Nelson,* 488 N.W.2d 600, 602 (N.D.1992) [reasonable and articulable suspicion; DUI]; *State v. Neis,* 469 N.W.2d 568 (N.D.1991) [reasonable and articulable suspicion; DUI]; *State v. Dorendorf,* 359 N.W.2d 115 (N.D.1984) [less than probable cause; DUI]; *State v. Kolb,* 239 N.W.2d 815 (N.D.1976) [less than probable cause; DUI].

■ It is not clear from the legislative history whether the legislature intended to prohibit stops of motor vehicles on less than probable cause except in the limited circumstances listed in section 29–29–21. *See Davis v. Kansas Dept. of Revenue,* 252 Kan. 224, 843 P.2d 260, 263 (1992) ["The history of the (Kansas) statute (analogous to section 29–29–21, NDCC,) neither supports a claim that it governs all types of police contact with citizens nor a claim that it functions as a general exclusionary rule.... (L)egislation in one area concerning warrantless searches does not act to forbid all other types of search activity."] We believe, however, that the legislature has acquiesced in our decisions.[3] *See Blair v. City of Fargo,* 171 N.W.2d 236 (N.D.1969), *cert. denied,* 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 397. [Where courts of this State have construed statute and such construction is supported by the long acquiescence on the part of the legislative assembly and by the failure of the assembly to amend the law, it will be presumed that such interpretation of the statute is in accordance with legislative intent.] Section 29–29–21, NDCC, has not been amended since 1971. We conclude, as we have impliedly concluded for years, that section 29–29–21, NDCC, is not applicable to investigatory stops of motor vehicles and, therefore, does not itself prohibit law enforcement from using checkpoints.[4]

---

**3.** We note that an initiated measure to prohibit stops of vehicles "at random or otherwise without probable cause by any law enforcement officer(s)" was defeated in the 1992 general election. Ch. 654, 1993 Session Laws.

**4.** We also note that Chapter 24–15, NDCC, which authorizes temporary roadblocks for apprehending persons wanted for violation of the law, does not "limit or encroach upon the existing authori-

■ Next, Uhden argues that sobriety checkpoints violate our State Constitution. We assume Uhden refers to Article 1, section 8, N.D. Constitution, which proscribes unreasonable searches and seizures, although Uhden does not specify a constitutional provision.[5] In *Everson, supra,* we relied on our earlier decision in *Wetzel, supra,* and the United States Supreme Court's decision in *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), to conclude that a stop of a motorist at a multi-purpose highway checkpoint did not violate the Fourth Amendment to the United States Constitution.[6] Uhden asserts, however, that the expectation of privacy of motorists in North Dakota should be afforded greater protection under the comparable provision of the North Dakota Constitution than it receives under the Fourth Amendment. Uhden cites only the Michigan Supreme Court's determination in *Sitz* that the checkpoint at issue violated Article 1, section 11, of the Constitution of the State of Michigan, *Sitz v. Department of State Police,* 443 Mich. 744, 506 N.W.2d 209 (1993), despite the fact that the United States Supreme Court had earlier found the checkpoint to be reasonable under the Federal Constitution. Our research has revealed several state court decisions holding checkpoint stops illegal under their respective state constitutions, but few states have adopted per se constitutional bars to checkpoints. *See e.g., Ascher v. Commissioner of Public Safety,* 505 N.W.2d 362 (Minn.App.1993) [Although checkpoints are not per se unconstitutional under Article 1, section 10, Minnesota Constitution, that section requires the State to present greater evidence that the checkpoint advances the public interest than is required under Fourth Amendment analysis.]; *State v. Blackburn,* 63 Ohio Misc.2d 211, 620 N.E.2d 319 (1993) [Article 1, section 14, Ohio Constitution, although not proscribing all roadblocks, prohibits their use in the absence of a substantial justification for not using other, less intrusive methods of law enforcement.]; *State v. Henderson,* 114 Idaho 293, 756 P.2d 1057 (1988) [Although checkpoints might be permissible if established with prior judicial authorization under legislative authority, Article 1, section 17, of Idaho Constitution prohibits warrantless roadblock at issue.]; *City of Seattle v. Mesiani,* 110 Wash.2d 454, 755 P.2d 775 (1988) [Particular roadblock at issue unconstitutional under Article 1, section 7, Washington Constitution; unnecessary to reach Fourth Amendment issue]; *Nelson v. Lane County,* 304 Or. 97, 743 P.2d 692 (1987) [checkpoints unconstitutional under Article 1, section 9, Oregon Constitution, in absence of specific statutory authority]. More often, it appears, checkpoints have been sustained against state constitutional law attack. *See, e.g., Gray v. Commissioner of Public Safety,* 505 N.W.2d 357 (Minn.App.1993); *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992); *State v. Tykwinski,* 170 Ariz. 365, 824 P.2d 761 (1991); *Orr v. People,* 803 P.2d 509 (Colo.1990); *State v. Patterson,* 582 A.2d 1204 (Me.1990); *Ingersoll v. Palmer,* 43 Cal.3d 1321, 241 Cal.Rptr. 42, 743 P.2d 1299 (1987); *see generally* 37 ALR4th 10.

■ In *Everson,* we balanced the competing interests of the State and the individual

---

ty" to perform traffic-control duties. NDCC §§ 24–15–02, 24–15–04.

5. Parties raising constitutional claims are to articulate the specific constitutional provisions which they claim are being violated. *Menz v. Coyle,* 117 N.W.2d 290 (N.D.1962). Also, persuasive authority and reasoning should support the constitutional claim. *Wisdom v. State, N.D. Real Estate Com'n,* 403 N.W.2d 19 (N.D.1987). We have stated that a party who raises a constitutional challenge "should bring up his heavy artillery or forego the attack entirely." *So. Valley Grain Dealers v. Bd. of Cty. Com'rs,* 257 N.W.2d 425, 434 (N.D.1977). Uhden's mere reference to a brief submitted in a prior case, in which Uhden's counsel challenged on Fourth Amendment grounds the use of police road-

blocks, does not fit the description of "heavy artillery" required to mount an attack on state constitutional grounds.

6. The trial court in *State v. Everson,* 474 N.W.2d 695 (N.D.1991), concluded that the checkpoint was unconstitutional because the officers requested motorists to produce their drivers' licenses and vehicle registrations as a pretext or subterfuge to check for the presence of controlled substances. Essentially, the municipal court in the case at bar reached the same conclusion, in that the request for Uhden's driver's license served as a pretext to determining whether Uhden was intoxicated. A majority of this court rejected the trial court's conclusion in *Everson;* Uhden does not raise the issue on this appeal.

to determine whether or not a stop was reasonable within the meaning of the Fourth Amendment. While we agree that Article 1, section 8, N.D. Constitution, may afford individuals greater protection against unreasonable searches and seizures than that which the Fourth Amendment provides, we believe a similar balancing analysis is required to determine whether the checkpoint stop was reasonable under our State Constitution. *See Commonwealth v. Blouse, supra; Ingersoll v. Palmer, supra,* 241 Cal.Rptr. at 47, 743 P.2d at 1304 ["California constitutional principles are based on the same considerations, i.e., balancing the governmental interests served against the intrusiveness of the detention."] [7]

■ The City has an important interest in controlling the problem of drunk driving. To determine the reasonableness of the stop, this interest "must be balanced with the degree to which this checkpoint advances the public interests, and the severity of the interference with individual liberty caused by the checkpoint." *Everson, supra,* 474 N.W.2d at 701. Uhden does not challenge the public interest served by the checkpoint, nor does he point us to anything in the record regarding severity of the interference with individual liberty.[8]

The checkpoint was governed by carefully tailored guidelines, prepared by an advisory committee to the Board of City Commissioners of the City of Bismarck. *Compare*

*Goehring, supra.* The guidelines enumerated factors to be considered in preparing a checkpoint, limited the discretion officers may use on the scene, and, among other things, expressly prohibited the stopping of motorists who avoided the checkpoint, unless the officers had reasonable suspicion of a violation of law.

As required by the guidelines, an operational briefing was prepared by the Bismarck Police Department regarding this particular checkpoint. The briefing provided that the checkpoint would run from 10:00 p.m., June 19, to 2:00 a.m., June 20, 1992. There was no discretion regarding who would be stopped; initially, every other vehicle was to be stopped, although the frequency of the stops could be adjusted by the supervising officer, if necessary. The location of the stop was chosen by the policy-making official. This particular location was chosen due, in part, to ample lighting, presumably so that "the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion." *United States v. Ortiz,* 422 U.S. 891, 894–95, 95 S.Ct. 2585, 2587, 45 L.Ed.2d 623 (1975); *United States v. Martinez–Fuerte,* 428 U.S. 543, 558, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976); *Sitz,* 496 U.S. at 453, 110 S.Ct. at 2486. The briefing also called for the use of signs, flares, cones and other safety devices. The briefing carefully choreographed the en-

---

**7.** The California Supreme Court equated sobriety checkpoints to "investigative detentions and inspections conducted as part of a regulatory scheme in furtherance of an administrative purpose," *Ingersoll, supra,* 241 Cal.Rptr. at 46, 743 P.2d at 1304, such as airport security screening searches. The purpose of airport security screening searches is not to "ferret out contraband or preserve for trial evidence of criminal activity", but is to " 'insure that dangerous weapons will not be carried onto an airplane and to deter potential hijackers from attempting to board. [Citations]' " *Id.* 241 Cal.Rptr. at 49, 743 P.2d at 1305–06 (quoting *People v. Hyde,* 12 Cal.3d 158, 166, 115 Cal.Rptr. 358, 524 P.2d 830 [1974]). Likewise, the court concluded that the purpose of the sobriety checkpoint was not to detect crime or gather evidence of a crime, but was regulatory in nature—"to promote public safety by deterring intoxicated persons from driving on the public streets and highways." *Id.* 241 Cal.Rptr. at 46, 743 P.2d at 1303. The stated purpose of the Bismarck sobriety checkpoint pro-

gram also was to deter driving by impaired persons, rather than to detect crime or gather evidence of crime. *Contra, State of Oregon v. Boyanovsky,* 304 Or. 131, 743 P.2d 711 (1987) [roadblock was used to gather evidence for defendant's criminal prosecution; because there was no individualized suspicion of wrongdoing, the roadblock was unconstitutional under Article 1, section 9, Oregon Constitution].

**8.** At oral argument, Uhden's attorney did allege that the location of the checkpoint was such that it could not be viewed by motorists until it was too late for the motorists to turn off the road and avoid it. We do not belittle the significance of this alleged fact and the intrusion caused thereby. This would be one relevant factor in the analysis of the intrusiveness of the stop, though not itself conclusive, *see Everson, supra,* but we do not find in the record before us evidence supporting the allegation of Uhden's attorney.

tire procedure and scripted the colloquy to take place between the officers and motorists. *See* appendix.

The record before us indicates that the officers at the checkpoint followed the directives of the guidelines and operational briefing. We believe the record supports the county court's finding of constitutionality, as the strictures of the guidelines and briefing adequately advance the public interests and limit interference with individual liberty, and Uhden does not draw our attention to any countervailing evidence in the record.

■ We note that in *Everson, supra,* and *Wetzel, supra,* we did not hold that all police checkpoints were per se constitutional under the Fourth Amendment, nor did the United States Supreme Court so hold in *Sitz, supra.* Likewise, we do not today hold that all sobriety checkpoints are per se constitutional under Article 1, section 8, of the North Dakota Constitution. However, Uhden points to nothing in the record to rebut the evidence of reasonableness, and we decline his invitation to hold all checkpoint stops per se unconstitutional under our State Constitution. We affirm the county court's decision to deny Uhden's motion to suppress evidence.

## II

As to the double jeopardy argument raised on appeal, we believe Uhden has somewhat misstated the issue. The DUI charge was originally brought against Uhden in municipal court. Driving while under the influence is an offense both under Bismarck City Ordinance and the North Dakota Century Code. NDCC § 39–08–01. Uhden made a pretrial motion to suppress evidence, challenging the legality of the stop. After a hearing on the motion, the municipal court granted Uhden's motion to suppress and dismissed the complaint.

■ Under subsections (1) and (5) of section 29–28–07, NDCC, the State is authorized to bring an appeal from an order "quashing an information or indictment" and from an order granting the suppression of evidence. We have construed this statute to permit a city to appeal from a dismissal of its complaint, where the complaint charges the defendant with an act proscribed both by city ordinance and state statute. *City of Bismarck v. Hoopman,* 421 N.W.2d 466 (N.D. 1988); *see also, City of Minot v. Knudson,* 184 N.W.2d 58 (N.D.1971). We thus conclude that the City's appeal from municipal court to county court was authorized by statute.

■ We have defined the parameters of the protection against double jeopardy under both the Fifth Amendment to the United States Constitution and Article 1, section 12 of the North Dakota Constitution in the context of an appeal by a city as follows:

"The City has the same right to appeal that the State has 'when the complaint charges the defendant with an act proscribed by city ordinance which is also proscribed by a state statute.' *City of Bismarck v. Hoopman* [*supra* ]; *See also City of Minot v. Knudson* [*supra* ] .... [T]he City's right to appeal is governed by NDCC 29–28–07. ·[footnote quoting text of statute omitted]

"There can be no appeal from a true judgment of acquittal. *State v. Flohr,* 259 N.W.2d 293 (N.D.1977). The City can, however, appeal from '[a]n order quashing an information or indictment or any count thereof.' NDCC 29–28–07(1). This includes the right to appeal from a dismissal, regardless of its label, that has the same effect as an order quashing an information. *State v. Hogie,* 424 N.W.2d 630 (N.D.1988). A majority of this court holds that a dismissal based upon legal conclusions, rather than resolution of any factual element of the offense, is equivalent to an order quashing an information, and is therefore appealable by the State. *State v. Bettenhausen,* 460 N.W.2d 394 (N.D.1990); *State v. Thill,* 468 N.W.2d 643, 645 (N.D.1991). The propriety of this appeal depends upon whether the trial court reached only legal conclusions or resolved factual elements.

\*   \*   \*   \*   \*   \*

"The question of what constitutes an acquittal, as distinguished from a dismissal, is not controlled by the trial court's characterization of the ruling. *State v. Melin,* 428 N.W.2d 227 (N.D.1988). 'Rath-

er, one must look at the substance of the judge's ruling, whatever its label, and determine whether it actually represents *a resolution of some or all of the factual elements of the offense charged.' Melin,* 428 N.W.2d at 229 (quoting *Flohr,* 259 N.W.2d at 295, which emphasizes language from [*United States v.*] *Martin Linen Supply Co.,* [430 U.S. 564, at 574–75, 97 S.Ct. 1349], at 1354–55, [51 L.Ed.2d 642 (1977) ]. Thus, we assess the substance of the trial court's ruling to determine whether it actually represents a resolution of a factual element of the charged offense." *City of Dickinson v. Kraft,* 472 N.W.2d 441, 442–44 (N.D.1991).

*See also, State v. Hammond,* 498 N.W.2d 126 (N.D.1993) [discussing our determinations of when jeopardy attaches]. In this case, the municipal court judge only entertained evidence and ruled on the issue of whether Uhden had been legally stopped, after Uhden's pretrial motion to suppress. The judge did not make any factual determination that insufficient evidence of impairment was presented. The judge properly dismissed the action, rather than acquit Uhden, because evidence was not "heard by the judge acting as factfinder during trial." *Hammond, supra,* at 128 n. 2.

■■■ Because municipal courts are not courts of record, appeals from municipal court to county court require "trial anew." *See* NDCC §§ 27–07.1–18, 40–18–19. Although this procedure is cumbersome and duplicative, we find no constitutional deficiency in permitting the City to appeal from the pretrial suppression of evidence and dismissal of the complaint against Uhden, nor in permitting the City to present different evidence regarding the suppression motion at county court than that which was offered in municipal court.

The judgment of the county court is affirmed.

MESCHKE and NEUMANN, JJ., and BRUCE E. BOHLMAN, District Judge, concur.

BRUCE E. BOHLMAN, District Judge, sitting in place of SANDSTROM, J., disqualified.

APPENDIX

The Sobriety Checkpoint Operational Briefing stated that each stop was to be carried out as follows:

"9. When Sergeant Haas (or his replacement) stops a vehicle he will greet them by saying 'Good evening, I'm Sergeant/Officer _____ and this is a Bismarck Police Department Sobriety Checkpoint.' The motorist will then be directed to a contact officer.

"10. After the contact officer directs the motorist to a stop position, they will greet them by saying, 'Good evening, I'm Officer _____ and this is a Bismarck Police Department Sobriety Checkpoint.' The officer will then ask for the driver's license, and they will ask the driver his current address. If there is no suspicion of impairment, the driver's license should be handed back at about the time the officer asks the driver if they have consumed an alcoholic beverage or other drugs this evening. If the driver says 'no' and there is no other compelling reason to detain the driver, the brochure/questionnaire should be given to the driver and they should be allowed to leave.

"If the driver interrupts or the circumstances are such that you can't use the exact greeting and an arrest is made, explain what was said when you complete your report.

"11. If the driver isn't able to produce a driver's license, a driver's license check may be requested from dispatch. If you are unable to determine the driver's license status or if the status is revoked, suspended, expired, et cetera, follow the current Bismarck Police Department policy.

"If a driver simply refuses to produce a driver's license, they should not be allowed to leave until they have been positively identified.

\*　\*　\*　\*　\*　\*

"12. If a driver indicates that they have consumed an alcoholic beverage or other

drugs during the evening, and the circumstances indicate a further investigation is warranted, or if there are other compelling reasons to continue the investigation, the driver may be asked to exit the vehicle for further investigation."

LEVINE, Justice, concurring in the result.

I take issue with footnote 6 and its attempt to equate the pretext involved in a looking-for-drugs checkpoint, *see State v. Everson,* 474 N.W.2d 695 (N.D.1991), the constitutionality of which has not been decided by the United States Supreme Court, with the so-called "pretext" of the sobriety checkpoint in this case. It's the old apples-and-oranges fallacy. The constitutionality of the sobriety checkpoint depends upon the absence of pretext. The safety of the vehicle and sobriety of the driver each has been deemed of sufficient public interest to make a brief, publicized, nondiscretionary seizure reasonable under the Fourth Amendment even without individualized suspicion. *See Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481 (1990); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

In *Sitz,* the purpose of the sobriety checkpoint stop was to implement the strong public interest in having licensed sober drivers on public roads by deterring intoxicated persons from driving on those roads. No comparable public interest has been enunciated yet by the United States Supreme Court that would constitutionalize checkpoints for general law enforcement purposes to catch criminals. Indeed, if the primary purpose of the sobriety checkpoint stop were to detect crime or make arrests of drunk drivers, an individualized suspicion of wrongdoing would be required by the Fourth Amendment and certainly, by article I, section 8 of the North Dakota Constitution. *See, e.g., Ingersoll v. Palmer,* 241 Cal.Rptr. 42, 46, 743 P.2d 1299, 1303–04 (1987) [concluding that sobriety checkpoints primarily promote public safety and therefore do not require an individualized suspicion of wrongdoing under the federal and state constitutions]. And the Fourth Amendment's requirement of reasonableness, to-wit, individualized suspicion, may

only be repealed by action of the states, and not by the United States Supreme Court or this court. U.S. Const. art. V. Because *Everson* condoned a stop, the express purpose of which was to discover evidence of crime and make arrests for commission of that crime, I remain convinced that *Everson* was wrongly decided. However, I agree that *Everson* plays no part in this case because neither party relies on it.

Article I, section 8 of our state constitution requires us to protect the integrity of the individual freedom it ensures North Dakotans against unwanted, uninvited, unreasonable government interference. In criminal law, government interference, to be reasonable, must be accomplished by probable cause generally, individualized suspicion occasionally and until recently, never without one or the other.

In upholding the sobriety checkpoint in *Sitz, supra,* the Supreme Court used a balancing test, applicable generally to administrative proceedings, *see Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), in which it weighed the gravity of the public concerns served by the checkpoint stop against the degree to which the seizure advanced the public interest against the degree to which the seizure interfered with individual liberty. Suffice it to say, individual liberty lost the Supreme Court's weigh-in. We need not decide in this case whether we should accept the federal balancing method of analysis for interpreting our state constitution, *see, e.g., Sitz v. Department of State Police,* 443 Mich. 744, 506 N.W.2d 209 (1993), because even if we did accept the balancing scheme, under the North Dakota constitution, it is this court, not the United States Supreme Court, that does the weigh-in and this court should weigh the relevant factors independently under the North Dakota constitution. *See, e.g., Ascher v. Commissioner of Pub. Safety,* 505 N.W.2d 362 (Minn.Ct.App.1993).

Were we to apply a balancing test, the state would bear the burden of proof by a preponderance of the evidence to establish the reasonableness of the checkpoint stop made without a warrant or individualized suspicion. *See State v. Kirk,* 493 A.2d 1271

(N.J.Super.Ct.App.Div.1985); *State v. Blackburn*, 63 Ohio Misc.2d 211, 620 N.E.2d 319 (Clark County Mun.Ct.1993); *see also State v. Orr*, 375 N.W.2d 171, 180 n. 11 (N.D.1985). Circumstances may make a checkpoint unreasonable unless the state shows that it is closely related to accomplishing its intended goal. *State v. Tykwinski*, 170 Ariz. 365, 824 P.2d 761 (1991); *Pimental v. Department of Transp.*, 561 A.2d 1348 (R.I.1989). In balancing the interests at stake, we would weigh the invasion of liberty against the necessity for the invasion and the invasion's effectiveness in achieving the state's goal. *See, e.g., Ingersoll v. Palmer, supra.* The question is whether a particular roadblock is either necessary or effective enough to warrant the intrusion it causes on the individual. *See State v. Henderson*, 114 Idaho 293, 756 P.2d 1057 (1988); *State v. Koppel*, 127 N.H. 286, 499 A.2d 977 (1985); *Lowe v. Commonwealth*, 230 Va. 346, 337 S.E.2d 273 (1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986).

In this case, the defendant relied exclusively on his statutory argument to attack his seizure and arrest. I agree with the majority's resolution of the statutory argument. I also agree that the defendant did not raise the state constitutional argument and did not develop the argument that this sobriety checkpoint did not advance the public interest under the North Dakota constitution, *see Ascher, supra*, or that the serious invasion of privacy and liberty rights by suspicionless seizures outweighs the public interest at stake. Our resolution of such issues must therefore await another day.

Therefore, I concur in the result.